UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANA SINCLAIR,

       Plaintiff,

v.                                        Case No. 5:05-CV-072

BANKERS TRUST COMPANY             HON. GORDON J. QUIST
OF CALIFORNIA, N.A.,

       Defendant.
_____/

## OPINION

Now before the Court is Defendant Bankers Trust's motion to dismiss Plaintiff Lana Sinclair's complaint on the ground that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Felman* doctrine, or, alternatively, that Plaintiff's claim is barred by claim preclusion. For the following reasons, the Court will grant Defendant's motion to dismiss.

### I. Facts and Procedural History

On April 26, 2000, Sinclair borrowed $65,000 from her original lender and in return gave the lender a promissory note and a mortgage on property located at 4569 Nickleplate Road, Ionia, Michigan. Through mesne conveyances, Bankers Trust acquired the note and mortgage and retained Countrywide Home Loans, Inc. (CHL) to administer the note and mortgage. Sinclair defaulted on her payments due under the note and mortgage. Thereafter, Sinclair and Countrywide entered into a Repayment Plan Agreement on September 24, 2002. Sinclair then defaulted on the Repayment Plan Agreement, whereupon Bankers Trust foreclosed the mortgage. Sinclair did not redeem the property from foreclosure before the expiration of the statutory redemption period. As Sinclair remained in possession of the property after the expiration of the statutory redemption period,

Bankers Trust commenced a proceeding for possession of the property in the Sixty-Fourth Judicial District Court of Michigan.

In defense of Bankers Trust's claim for possession, Sinclair asserted that the foreclosure sale was invalid because she was not in default at the time of foreclosure, having cured the default under an oral agreement with Bankers Trust's servicing agent, CHL. Specifically, Sinclair testified that she entered into an oral agreement with CHL to pay $3,075 to re-instate the mortgage, which would cancel the sheriff's sale scheduled for August 7, 2003. Sinclair testified that although she made the payment to CHL on July 21, 2003, CHL notified her on August 8, 2003, that it was rejecting her payment. The Michigan district court held that any oral agreement between Sinclair and CHL would be unenforceable due to the statute of frauds, as the agreement related to a transaction regarding property. The district court judge, after noting that Bankers Trust had a certified valid Sheriff's deed, entered judgment of possession in Bankers Trust's favor on September 24, 2004.

Sinclair appealed the judgment of possession to the Ionia County Circuit Court. The circuit court denied her appeal on April 22, 2005. Sinclair then objected to the circuit court's order of dismissal and requested a new trial. On July 26, 2005, the circuit court denied her objections and request for a new trial. Sinclair then filed another appeal to the Ionia County Circuit Court challenging the Sixty-Fourth District Court's order of eviction, which was issued as a means to enforce its September 24, 2004, judgment of possession. On September 20, 2005, the Ionia County Circuit Court entered an order dismissing all appeals filed by Sinclair, directing that she vacate the property within 10 days, awarding attorney fees in favor of Bankers Trust, and prohibiting Sinclair from filing any further pleadings with the court until she paid the costs awarded to Bankers Trust.

## II. Analysis

In her complaint,[1] Sinclair asserts that on July 17, 2003, Bankers Trust falsely represented that her mortgage would be re-instated upon a payment of $3,075 and that the sheriff's sale scheduled for August 7, 2003, would be canceled. As relief, Plaintiff requests that the deed and lawful possession to the property at 4569 Nickleplate Rd., Ionia, Michigan, be restored to her and that she receive compensatory and exemplary damages as a result of Bankers Trust's wrongful actions. In response, Bankers Trust argues that the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction to entertain Sinclair's suit or, alternatively, that claim preclusion prevents Sinclair from maintaining this suit.

### A. Rooker-Feldman

The *Rooker-Feldman* doctrine prohibits federal courts below the United States Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). Recently, the Supreme Court, after noting that the *Rooker-Feldman* doctrine has been

---

[1] In her complaint, Sinclair alleges that the basis for this Court's jurisdiction is diversity of citizenship. She asserts that she is a citizen of Michigan and that Bankers Trust is a California corporation. She does not allege that Bankers Trust's principal place of business is not in Michigan. If Bankers Trust's principal place of business were in Michigan, then diversity of citizenship would not exist. Bankers Trust, however, admitted in its answer that it and Sinclair are citizens of different states.

After alleging that she was a resident of Michigan and that Bankers Trust was a resident of California, Sinclair then alleged that "[t]he amount in controversy is within the jurisdiction of this court because of diversity of citizenship of the parties." Although this allegation is deficient to establish diversity jurisdiction, for the amount in controversy must exceed $75,000 when the alleged jurisdictional basis is diversity, the Court takes notice that to the extent this complaint is deficient to establish diversity jurisdiction, Sinclair, as evidenced by her motion to amend her complaint, would have supplemented her complaint to allege that the amount in controversy exceeds $75,000.

Finally, Plaintiff contends in her response brief to Bankers Trust's brief in support of its motion to dismiss that her claim is based upon federal question jurisdiction. In her brief, she cites a litany of federal statutes and regulations that she claims her claim is based upon. Neither in her complaint or proposed amended complaint, however, does she claim that her action is based upon these federal statutes and regulations.

"[v]ariously interpreted in the lower courts," endeavored to clarify the doctrine's contours. *Exxon Mobil Corp., v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521 (2005).  The Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1521-22.

In *Exxon Mobil*, two subsidiaries of ExxonMobil formed joint ventures with Saudi Basic Industries Corporation (SABIC) to produce polyethylene in Saudi Arabia. *Id*. at 1524-25. The parties eventually "began to dispute royalties that SABIC had charged the joint ventures for sublicenses to a polyethylene manufacturing method." *Id*. at 1525.  In July 2000, SABIC preemptively sued ExxonMobil in Delaware state court seeking a declaratory judgment that the royalty charges were proper.  *Id*.  "About two weeks later, ExxonMobil . . . countersued SABIC in the United States District Court for the District of New Jersey . . . ."  *Id*.  In January 2002, ExxonMobil "answered SABIC's state-court complaint, asserting as counterclaims the same claims . . . [it] had made in the federal suit in New Jersey.  The state suit went to trial in March 2003, and the jury returned a verdict of over $400 million in favor of [ExxonMobil]." *Id*.

Before the Delaware suit went to trial, SABIC moved to dismiss the federal suit. *Id*.  "The Federal District Court denied SABIC's motion to dismiss.  SABIC took an interlocutory appeal, and the Court of Appeals heard argument in December 2003, over eight months after the state-court jury verdict." *Id*.  Although ExxonMobil filed its federal complaint before the state-court trial reached judgment, the Court of Appeals held that "[t]he only relevant consideration . . . 'is whether the state judgment precedes a federal judgment on the same claims.'" *Id*. (quoting *Exxon Mobil v. Saudi*

4

*Basic Indus. Corp.*, 364 F.3d 102, 105 (3rd Cir. 2004)). The Court of Appeals held that "[o]nce ExxonMobil's claims had been litigated to a judgment in state court, . . . *Rooker Feldman* 'preclude[d] [the] federal district court from proceeding.'" *Id*. at 1526 (quoting *Exxon Mobil*, 364 F.3d at 104). The Supreme Court unanimously disagreed with this holding, noting that "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Id*. "[N]either *Rooker* nor *Feldman*," the court concluded, "supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court."

Unlike *Exxon Mobil*, the state court proceedings between Bankers Trust and Sinclair reached judgment before Sinclair filed her federal claim. The Michigan district court entered judgment of possession in favor of Bankers Trust on September 24, 2004, and Sinclair did not file her federal suit until April 29, 2005. There was no concurrent jurisdiction, therefore, between the federal and state courts. The fact that the Michigan circuit court did not deny Sinclair's objections to the dismissal of her appeal until July 26, 2005, does not render *Rooker-Feldman* inapplicable, for the state court proceeding that must reach judgment before a federal complaint is filed for *Rooker-Feldman* to be applicable is the appealable trial court's judgment, which, in this case, was the state court's judgment of possession issued on September 24, 2004.

In addition to holding that *Rooker-Feldman* does not deprive a federal court of jurisdiction if a state court judgment is not rendered until after a parallel federal action is filed, the Court explained that *Rooker-Feldman* also does not "stop . . . district court[s] from exercising subject-matter jurisdiction because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. at 1527. Rather, the Court continued, quoting the Seventh Circuit's opinion in

5

*GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993), "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id*. On the other hand, if a federal plaintiff seeks to set aside a state judgment (because the plaintiff's legal injury stems from the state court judgment, as distinguished from the adverse party), then *Rooker-Feldman* deprives the federal district court of jurisdiction. *GASH Assocs.*, 995 F.2d at 728; *see also Centres, Inc. v. Town of Brookfield*, 148 F.3d 669, 702-03 (7th Cir. 1998) (noting that "a federal claim alleging injury caused by a state court judgment must be distinguished from a federal claim alleging a prior injury that a state court failed to remedy," for "[i]njury due to a state court decision [is] the essential touchstone in determining the applicability of the *Rooker-Feldman* doctrine."). In determining whether a federal court plaintiff's complaint seeks to set aside a state court judgment (in other words, whether it is a de facto appeal of a state court judgment), the Sixth Circuit has instructed that courts "must pay close attention to the relief sought by the federal-court plaintiff." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (citations omitted).

In *GASH*, a partnership called GASH Associates owned an office building that was encumbered with three mortgages. 995 F.2d at 727. GASH created a fourth mortgage when it sold the building. *Id*. The buyer defaulted and GASH decided to foreclose on its interest. *Id*. This led to a sale at auction, which realized four million dollars, not enough to pay off the senior lenders, to which GASH owed nearly six million. *Id*. As a result, "GASH was stuck with a hefty deficiency judgment. The senior lenders asked the court to confirm the sale," which it did, "over GASH's vigorous objections." *Id*. "Dissatisfied with the outcome in state court," the Seventh Circuit noted,

6

GASH commenced an action in federal court against the Village of Rosemont, the winning bidder. *Id*. GASH claimed that Rosemont depressed the value of the building by commencing a condemnation action in state court while the foreclosure action was pending. *Id*. "By tendering only $3.8 million in the condemnation action," GASH maintained, "Rosemont scared away rival bidders." *Id*.

The Seventh Circuit noted that "[d]ominating this case is a simple fact: GASH objects to the outcome of a judicial proceeding and filed a separate lawsuit to get around it." *Id*. Rather than filing an "independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," the court concluded that GASH was attacking the judgment itself, for it believed that the state court should not have confirmed the sale at such a low price and wanted the buyer to pay more. *Id*. at 728. "GASH did not suffer an injury out of court and then fail to get relief from state court," the Seventh Circuit maintained, rather "its injury came from the judgment confirming the sale." *Id*. Therefore, the court held, the *Rooker-Feldman* doctrine deprived the district court of jurisdiction to hear this suit.

In the case here, Sinclair requests that the deed and lawful possession of the property at 4569 Nickleplate Rd, Ionia, Michigan, be restored to her. This is a direct challenge to the state court's judgment granting possession of this property to Bankers Trust. In light of the relief she requests, it is clear that Sinclair is seeking to set aside this judgment, rather than presenting an independent claim for relief. As in *GASH Associates,* where GASH maintained that the sale of the building should not have been confirmed at such a low price and brought a suit in federal court seeking to get around it, Sinclair believes that the Michigan district court should not have granted Bankers Trust possession and filed this claim in an effort to get around it. If this Court were to entertain this claim

7

for relief, it "would effectively be acting impermissibly as an appellate court reviewing the state court disposition," which the *Rooker-Feldman* doctrine prohibits. *Peterson Novelties*, *Inc. v. City of Berkley*, 305 F.3d 386, 392 (6th Cir. 2002).

Sinclair also requests damages as a result of the alleged unlawful foreclosure. In granting Bankers Trust possession of the disputed property, the Michigan district court found that the foreclosure and the sheriff's deed were valid. Because Sinclair's claim for damages is premised on the ground that the foreclosure was invalid, for this Court to grant Sinclair damages, the Court would need to conclude that the Michigan district court was wrong in upholding the foreclosure. This the Court cannot do without impermissibly acting as an appellate court in reviewing the Michigan district court's decision.

**B. Claim Preclusion**

Although the *Rooker-Feldman* doctrine and preclusion law are not coterminous, in this case, even if the *Rooker-Feldman* doctrine had not deprived this Court of subject-matter jurisdiction to entertain Sinclair's suit, claim preclusion would have prevented her from maintaining it. As the Court re-iterated in *Exxon*, the "Full Faith and Credit Act . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon*, 125 S. Ct. at 1527 (quoting *Parson Steel*, *Inc. v. First Alabama Bank.*, 474 U.S. 518, 523 (1986)). In Michigan, claim preclusion bars a second action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Mgmt.,* 463 Mich. 569, 575, 621 N.W.2d 222, 225 (2001) (quoting *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999)). These three conditions have been met in this case. First, the original action between

Sinclair and Bankers Trust in Michigan district court was decided on the merits when the court, after taking evidence as to the validity of the foreclosure and sheriff's deed, ruled in favor of Bankers Trust.

Second, the matter contested in this action was or could have been resolved in the first action. In the instant action, Sinclair asserts that Bankers Trust fraudulently represented that if she paid Bankers Trust $3,075, her mortgage would be re-instated. As relief, she requests that the deed to the property at 4569 Nickleplate Rd, Ionia, Michigan, be returned to her. In the state court proceedings, Sinclair raised as a defense to Bankers Trust's claim for possession that she had an oral agreement with Bankers Trust to pay $3,075 to re-instate her mortgage. Therefore, she claimed, there was no valid foreclosure for Bankers Trust breached the agreement when it refused to accept her payment. Because the Michigan district court found that the foreclosure was valid and granted Bankers Trust possession, it necessarily denied Sinclair's claim that her agreement with Bankers Trust invalidated the foreclosure. Thus, the Michigan district court resolved the matter contested in this case.

However, even if the Court were to interpret Sinclair's claim here as not being resolved by the Michigan district court's decision, but rather as a counterclaim not raised and decided in the state court action, Sinclair's claim would still be precluded. In developing and applying its preclusion law, the Michigan Supreme Court has taken guidance from the Restatement (Second) of Judgments. *See Monat v. State Farm Ins. Co.*, 469 Mich. 679, 687, 677 N.W.2d 843 (2004). The Restatement provides that "[w]here [a] defendant may interpose a claim as a counterclaim but fails to do so, [s]he is not thereby precluded from subsequently maintaining an action on that claim, except . . . if [t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the

initial action." Restatement (Second) of Judgments § 22 (1982). Since the maintenance of Sinclair's action in federal court, in which she seeks the return of the property at 4569 Nickleplate Rd, would "plainly operate to undermine" the state-court's grant of possession of this property to Bankers Trust, "the principle of finality requires preclusion" of this action. *Id.* at cmt. f.

Finally, the third condition is clearly met, as this action is between the same parties as in the original state court action.

### III. Conclusion

Because *Rooker-Feldman* deprives this Court of jurisdiction to entertain Sinclair's suit, and because, even if *Rooker-Feldman* had not deprived this Court of jurisdiction, Sinclair's suit would have been barred on the grounds of claim preclusion, the Court will therefore grant Bankers Trust's motion to dismiss Sinclair's complaint.

An order consistent with this opinion will be entered.


Dated:  December 13, 2005                            /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                                UNITED STATES DISTRICT JUDGE